Robert C. Gill, Conservator of the Estate and Person of John Nelson, Jr., Incompetent, Plaintiff-Appellant, v. Peerless Casualty Company, Defendant-Appellee.

### Gen. No. 11,145.

Second District, First Division.
August 7, 1958.
Released for publication August 25, 1958.

Miller, Thomas, Hickey & Collins, of Rockford (William E. Collins, and Edwin J. Powers, Jr., of counsel) for plaintiff-appellant.

Knight & Knight, of Rockford (William D. Knight, Jr., of counsel) for defendant-appellee.

PRESIDING JUSTICE DOVE delivered the opinion of the court.

The complaint in this action consisted of two counts. The first count alleged that on February 18, 1955 the Blackhawk Mutual Insurance Company issued to John Nelson, Jr. its automobile liability insurance policy; that while said policy was in full force the insured was involved in an automobile collision as a result of which Judson L. Davis was injured; that thereafter Davis brought an action in the circuit court of Winnebago County against Nelson to recover damages for injuries which he sustained as a result of said collision; that said action culminated in a judgment in favor of Davis and against Nelson for $25,000 which judgment plaintiff, as conservator for Nelson, has been called upon to pay. It was then alleged that under the provisions of said insurance policy said Blackhawk Insurance Company was obligated to defend said action and to pay said judgment. It was then averred that said company had failed to fulfill its obligations and this count prayed for judgment in favor of the plaintiff and against the Blackhawk Mutual Insurance Company for the amount of the judgment which had been rendered against Nelson in order that plaintiff may discharge that judgment.

The chancellor, upon motion and a hearing entered an order in the trial court finding that on February 27, 1957, in a certain proceeding then pending in the circuit court of Cook County, that court rendered a decree finding Blackhawk Mutual Insurance Company insolvent, directing its liquidation and enjoining the prosecution of all actions against it. Blackhawk Mutual Insurance Company therefor, is, not a party to this appeal and count one is in no way involved herein.

339

The second count of the complaint was directed against the Peerless Casualty Company and realleged many of the averments set forth in count one as above indicated and, in addition, averred that the Peerless Casualty Company was qualified to do business in this state and that it had entered into a contract with the Blackhawk Company for reinsurance of policies written by the Blackhawk Company and that by the provisions of this contract of reinsurance the Peerless Company became obligated to the policyholders of the Blackhawk Company, and became liable to plaintiff for the payment of the judgment which Davis had obtained against plaintiff's incompetent, John Nelson, Jr.

The Peerless Casualty Company filed its verified motion to dismiss this count and attached thereto and made a part thereof a copy of the reinsurance contract between the Blackhawk Mutual Insurance Company and the Peerless Casualty Company. Upon a hearing the trial court sustained this motion, dismissed this count at the costs of the plaintiff and rendered a final judgment in bar of the action. To reverse that judgment plaintiff appeals.

The agreement entered into between Blackhawk Mutual Insurance Company and appellee, Peerless Casualty Company, upon which appellant bases his right to recover, recited that appellee was the reinsurer and that the Blackhawk Mutual Insurance Company was the Company; that reinsurer obligated itself to accept reinsurance upon the terms and conditions set forth in the contract and in an exhibit which was made a part of the agreement. One paragraph of this agreement provided that the Blackhawk Company should retain for its own account liability for the first $5,000 of loss due on all claims and that the Reinsurer should indemnify and reimburse Blackhawk Company in excess of said $5,000.

Article three of the exhibit which was made a part of the contract provided: "The actual payment by the company of any loss shall be a condition precedent to any recovery under this agreement, and subject to such condition, the liability of the Reinsurer shall follow that of the Company, within the applicable policy limits and shall be subject in all respect to all the general and special stipulations, clauses, waivers and modifications of the company's policy, binder or other undertaking and any endorsements thereon." Article four of the same exhibit provides: "The Company will advise the Reinsurer at its office 32 Cliff Street, New York, N. Y. promptly of all claims and subsequent developments pertaining thereto, which may in the company's opinion develop into losses involving reinsurance hereunder. No settlement of claims involving this reinsurance shall be made without the consent of the Reinsurer."

An endorsement which formed a part of this reinsurance agreement made specific reference to the Illinois Insurance Code (Ill. Rev. Stats. 1957, Chap. 73, Article XI, Section 173) and provided that in the event of insolvency of the Blackhawk Company "this reinsurance shall be payable to its liquidator or receiver on the basis of the claim or claims allowed against the Company by any court of competent jurisdiction."

Counsel for appellant recognize that in the usual reinsurance agreement there is no privity of contract between the reinsurer and the policyholder of the reinsured company and that, as a general rule, the policyholder cannot maintain an action against the reinsurer. Counsel state, however, that the reinsurance agreement, in the instant case, incorporated all the terms and conditions of the original policy issued by the Blackhawk Company to Nelson and notwithstand-

ing the other provisions therein contained, insist that the judgment in favor of Judson L. Davis and against Nelson, plaintiff's incompetent, is binding on appellee and appellant should be permitted to recover a judgment in this proceeding directly against appellee, the reinsurer. In support of this contention counsel cite and rely upon Weil v. Federal Life Ins. Co., 264 Ill. 425.

In the Weil case the court held that the agreement there under consideration was more than one of reinsurance inasmuch as the reinsurer had assumed and guaranteed the policies of the first insurer and undertook to discharge the obligation of the first insurer to its policyholders. In holding that the policyholder could sue the reinsurer the court said (pp. 432–433) "A contract which is strictly one of re-insurance is merely one of indemnity of the first insurer against the risk which it has already assumed and it creates no privity of contract between the reinsurer and the person insured. (Vial v. Norwich Fire Ins. Society, 257 Ill. 355.) Unless a contract of reinsurance either expressly stipulates that the original insured can bring suit against the reinsurer or anything indicating such an intention, there is no privity of contract existing between the insured and the reinsurer. (Richards on Insurance Laws, 445.) The contract in this case was more than one of reinsurance, since it contained the following agreement: 'The Federal accepts said transfer to it of said policies and securities and hereby reinsures, as of the time when this contract goes into effect all the then living policyholders of the said Inter-State whose policies are then in force in said Inter-State and said Federal assumes and guarantees the said policies of said living policyholders in accordance with the terms and conditions of said policies, respectively, the future premiums on said policies to be paid to the Federal.' By assuming and guaranteeing the policies the defendant undertook to discharge the

342

obligations of the Inter-State to its policyholders and under such an agreement the insured may sue the reinsurer."

In Vial v. Norwich Union Fire Ins. Society, 257 Ill. 355 our supreme court stated that in cases where it has been held that a policyholder may maintain an action against the reinsuring company the contract between the reinsuring company and the reinsured was much more than a mere contract of reinsurance and that in cases where a policyholder can recover against the reinsuring company the reinsuring company had, by its contract, assumed the liabilities of the reinsured company and had agreed to pay them. In construing the contract of the insurance companies involved in that case the court said (p. 362) "There is no assumption of any liability of the Indemnity Company to the policyholders nor any agreement on the part of defendant in error to pay any loss sustained by the policyholders. It is strictly a contract to indemnify the Indemnity Company against any losses it might sustain but defendant in error assumed none of the liabilities of that company to its policyholders. The Indemnity Company continued liable, as before, to settle with its policyholders, and there is nothing in the contract to indicate that it was made for the benefit of the Indemnity Company's policyholders. It created no privity whatever between the Indemnity Company's policyholders and defendant in error, and therefore no right exists in plaintiff in error to maintain an action against defendant in error."

In Baltica Ins. Co. v. Carr, 330 Ill. 608 the court said (pp. 613, 614) "Re-insurance is a contract between the direct insurer and the re-insurer, by which the latter agrees to protect the former from risks already assumed. The insured, unless the contract so provides, has no concern with the contract of re-insurance and the re-insurer is not liable to the insured either as

343

surety or otherwise. The contract is not one of insurance but simply one of indemnity. It is not a contract against loss by fire or other hazard provided in the original policy but is one against loss by or on account of an outstanding contract of insurance with the owner of property, or simply a contract to indemnify the original insurer for a loss he may sustain upon his contract of insurance."

Counsel for appellant also cite and rely upon Homan v. Employer's Reinsurance Corporation, a Missouri case reported in 345 Mo. 650, 136 S.W.2d 289, 127 A. L. R. 163. The agreement in the Homan case was one of coinsurance and provided that the liability of the reinsurer should commence simultaneously and continue concurrently with the liability of the reinsured. (127 A. L. R. 174.)

In the instant case the parties denominated the agreement as a "Reinsurance Agreement" and it provided for indemnification of loss only above a stipulated amount. It explicitly provided that actual payment by the Blackhawk Company of any loss should be a condition precedent to any recovery under the agreement, made express reference to indemnity for loss or claims, defined claims to mean claims covered under policies issued by the Blackhawk Company and provided that if insolvency overtook the reinsured company, which made payment to it impossible, the amount of reinsurance due thereunder should be paid to the liquidator or receiver of the insolvent company.

By none of the provisions of the agreement did appellee obligate itself to pay any loss sustained by a policyholder of the Blackhawk Company to such policyholder. Its agreement was to pay the Blackhawk Company but only after the Blackhawk Company had paid a loss on a claim in excess of $5,000. The express language of this agreement makes it an excess rein-

surance contract and as such its provisions are not enforcible by appellant.

■ In disposing of this case the trial court, after carefully considering the provisions of the agreement executed by the Blackhawk Company and the Peerless Casualty Company, held that under the Statute of Frauds a clear and convincing written assumption of liability must be shown between the policyholder and the reinsuring company before there could be a recovery by the policyholder against the reinsuring company. The court further held that there were no provisions in the instant agreement which obligated the Peerless Casualty Company to pay or assume to pay to Nelson any loss which he, Nelson, may have sustained, as a policyholder under the provisions of the policy issued to him by the Blackhawk Company. In the absence of any such assumption the court concluded that there could be no recovery in the instant proceeding.

The judgment of the trial court is correct and must be affirmed.

Judgment affirmed.

SPIVEY and McNEAL, JJ., concur.